United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAN CUREN,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL CROP INSURANCE CORPORATION ET AL.,<br><br>    Defendants.<br>_____ / | No. C 13-04601 CRB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

      Chapter 11 Bankruptcy Trustee John Van Curen ("Trustee" or "Plaintiff") brought suit against the Federal Crop Insurance Corporation and Risk Management Agency (collectively, "Defendants") to compel payment of crop insurance proceeds for the benefit of Debtor Michael Hat, formerly doing business as Michael Hat Farming Company's ("Debtor's") bankruptcy estate. See generally Compl. (dkt. 1). Trustee filed a Motion for Partial Summary Judgment ("P. MSJ"), (dkt. 28), asking the Court to order Defendants to implement the administrative decision of the U.S. Department of Agriculture's National Appeals Division. Defendants, in turn, filed a Motion to Dismiss or in the Alternative for Summary Judgment ("Def. MSJ"), (dkt. 29), arguing that the National Appeals Division never had jurisdiction to decide the dispute because Trustee's claims are time-barred under the Federal Crop Insurance Act, 7 U.S.C. § 1508(j), and the subject crop insurance policies.

Because Plaintiff Trustee's claims are time-barred, the Court GRANTS Defendants' Motion and DENIES Plaintiff's Motion.

## I.   BACKGROUND

The facts in this case are virtually undisputed. Debtor grew grapes primarily in California's Central Valley and sold them to wine and juice manufacturers. See Van Curen v. Great Am. Ins. Co. (In re Hat), 363 B.R. 123, 129 (Bankr. E.D. Cal. 2007). Debtor filed for Chapter 11 bankruptcy relief on July 20, 2001. Compl. ¶ 8; see In re Michael Hat, also known as Michael Hat Farming Company, No. 04-32497 (Bankr. E.D. Cal. filed July 20, 2001). During the initial stages of Debtor's bankruptcy, until April 2003, Debtor continued operating his farming business as "debtor-in-possession." See In re Hat, 363 B.R. at 130.

Starting around 1999, Debtor purchased crop insurance for his grape crops when available. See id. at 131. While operating as debtor-in-possession, Debtor purchased substantial crop insurance coverage from American Growers Insurance Company ("AGIC") for the 2002 crop year. Van Curen Decl. Exhibit A (dkt. 28-2) at 7. He increased existing coverage on some 33 grape units, and purchased new coverage on 11 additional units. Id. AGIC, a private insurer, issued the policies, and the Federal Crop Insurance Corporation ("FCIC"), a creation of the U.S. Department of Agriculture, acted as reinsurer pursuant to a Standard Reinsurance Agreement between AGIC and FCIC. See id. at 3-4; see also Van Curen Decl. Exhibit J (dkt. 28-14) (Common Crop Insurance Policy); Burnett Decl. Exhibit 1 (dkt. 36-1) (Standard Reinsurance Agreement).

Most relevant to this action, the crop insurance policies contained the following provisions:

> 20. Arbitration.
> (a) If you and [AGIC] fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions published at 7 CFR part 11. . . .
>
> 25. Legal Action Against [AGIC]
> (a) You may not bring legal action against [AGIC] unless you have complied with all of the policy provisions.

2

> (b) If you do take legal action against [AGIC], you must do so within 12 months of the date of denial of the claim. Suit must be brought in accordance with the provisions of 7 U.S.C. 1508(j). . . .

Van Curen Decl. Exhibit J at 12-13.

Many of Debtor's insured crops suffered substantial damage during the 2002 crop year. Van Curen Decl. Exhibit A at 3-4. In late 2002, Debtor filed several insurance claims with AGIC under the various policies. Id. AGIC adjusters inspected Debtor's vineyards, processed and approved the claims, and sent Debtor $8,354,368 in indemnity payments. Id. at 4. Debtor cashed some of AGIC's indemnity checks, in the amount of $1,804,701, but never cashed the others. Id. After issuing checks to Debtor, in early 2003, AGIC began a "High Dollar Loss Review" of Debtor's claims, as required by the Reinsurance Agreement for claims over $100,000. Id.

As AGIC conducted its High Dollar Review, the insurer itself was experiencing severe financial difficulties. In November 2002, the Nebraska Department of Insurance issued an order of supervision over AGIC, and in December 2002, placed AGIC into rehabilitation. Burnett Decl. (dkt. 36) ¶ 8. The Nebraska Department of Insurance and the U.S. Department of Agriculture's Risk Management Agency[1] ("RMA") entered into a Memorandum of Understanding with regard to AGIC's financial troubles. See Van Curen Decl. Exhibit F (dkt. 28-10). The Memorandum essentially promised that RMA, acting on behalf of the Federal Crop Insurance Corporation ("FCIC"), would guarantee AGIC's insurance policies in the event of an AGIC liquidation. See id. ("RMA will ensure that all claims for [AGIC] policies that are reinsured by FCIC are paid in full."). RMA began day-to-day oversight of AGIC in January 2003 to ensure orderly claims processing and to transfer existing policies to new private insurers in an apparent effort to wind down AGIC's operations. Burnett Decl. ¶¶ 11-16.

Meanwhile, in April 2003, the bankruptcy court appointed Trustee to take over control and management of Debtor's bankruptcy estate. Van Curen Decl. Exhibit A at 4. Debtor

---

[1] RMA, a defendant herein, is an administrative agency within the U.S. Department of Agriculture. RMA manages the affairs of the Federal Crop Insurance Corporation.

3

could no longer operate his business as debtor-in-possession, and Trustee began the process of liquidating Debtor's business and paying his creditors. Id. Trustee accordingly took over responsibility for Debtor's pending 2002 AGIC crop insurance claims. Id.

In July 2003, AGIC concluded its High Dollar Review of Debtor's insurance claims. By letter dated August 7, 2003, AGIC issued its final determination to Trustee. Van Curen Decl. Exhibit D (dkt. 28-8). AGIC found that Debtor had been substantially overpaid on his claims, and that Debtor's estate owed AGIC repayment of some $1.2 million. Id. The letter ended with the following statement:

> "This letter constitutes a final determination by [AGIC]. Your insurance policy with us contains a mandatory arbitration clause that any disagreements regarding factual determinations be resolved through binding arbitration. . . . <u>Arbitration is considered legal action and must be commenced within 12 months from the date of this letter</u> notifying you of our final determination. . . ."

Id. (emphasis added).

Trustee responded just under one year later, by letter dated July 29, 2004. Van Curen Decl. Exhibit E (dkt. 28-9). Trustee denied any obligation to commence arbitration regarding the insurance claims, claiming that the bankruptcy court had exclusive jurisdiction over such matters. Id. Trustee also informed AGIC that its August 2003 letter was a violation of the automatic stay of 11 U.S.C § 362, and that AGIC's claims for repayment were nevertheless barred pursuant to a May 28, 2004 bankruptcy claims bar date. Id. Trustee then "reserve[d] all rights with respect to the 2002 Crop Claims, including the right to challenge AGIC's final determination regarding the validity of such claims irrespective of the deadline and arbitration procedures described in [AGIC's August 2003] letter." Id. Trustee did not commence arbitration or take any legal action to contest AGIC's decision by the August 7, 2004 deadline.

On February 28, 2005, a Nebraska state court entered an Order of Liquidation, Declaration of Insolvency, and Injunction (the "Liquidation Order") authorizing the Nebraska Department of Insurance to liquidate AGIC. Van Curen Decl. Exhibit G (dkt. 28-11). The Liquidation Order appointed Nebraska's Director of Insurance as Liquidator to administer AGIC's liquidation under court supervision. Id. The Liquidation Order stated

4

that "the rights and liabilities of AGIC and its insureds, creditors, shareholders and all other persons interested in its estate shall become fixed as of the date of entry of [the] Order. . . ." Id. The Liquidation Order further specified that "no actions at law or in equity or arbitration . . . may be brought against AGIC, or its Liquidator, nor shall any existing actions be maintained or further presented after issuance of" the Liquidation Order. Id. The Liquidation Order also required the appointed Liquidator to give notice of the liquidation to all potential AGIC claimants, and required all interested claimants to file claims with the Liquidator by August 28, 2005. Id.

The Liquidator immediately sent notice to claimants. See Van Curen Decl. Exhibit H (dkt. 28-12). The notice reiterated the key points from the Liquidation Order. Id. The notice stated that all actions against AGIC—those already pending and future actions not yet filed—were immediately enjoined, and informed potential claimants of the August 28, 2005 liquidation claims deadline. See id. Finally, the notice informed recipients that holders of federally reinsured AGIC policies (like Trustee) should receive a separate notice from RMA because RMA/FCIC had taken over servicing all federally reinsured AGIC policies. Id.

As promised, RMA separately sent notice to federally reinsured AGIC policy holders, informing them of RMA's role in taking over federally reinsured AGIC policies pursuant to the Memorandum of Understanding (between RMA and the Nebraska Liquidator) and the Standard Reinsurance Agreement (between RMA and AGIC). See Van Curen Decl. Exhibit I (dkt. 28-13). The RMA notice included a brief question and answer section addressing many policyholders' general concerns, including instructions on how and when to submit claims to RMA. Id.

Trustee submitted claims under the AGIC policies to the Nebraska Liquidator in early July 2005. See Burnett Decl. Exhibit 8 (dkt. 36-2). Liquidator rejected Trustee's claims on June 21, 2006, because "the obligation, if any, for any loss under [Trustee's] polic[ies] was transferred to the FCIC," "[a]s a result of the Order of Liquidation and pursuant to the terms of the Standard Reinsurance Agreement between [AGIC] and the [FCIC]." Burnett Decl. Exhibit 9 (dkt. 36-2). Trustee formally objected to Liquidator's rejection. See Burnett Decl.

5

Exhibit 10 (dkt. 36-2). In August 2008, Trustee and Liquidator stipulated to a final denial of Trustee's crop insurance claims with the understanding that Trustee would pursue those claims against RMA, as successor to AGIC. See Burnett Decl. Exhibit 14 (dkt. 36-3).

Commencing sometime around early 2006, Trustee simultaneously pursued RMA in an effort to obtain payment under the policies. See Burnett Decl. Exhibit 17 (dkt. 36-3). After approximately three years without a definitive response, in July 2009, Plaintiff filed suit in this district to compel an RMA decision as to Plaintiff's outstanding claims for indemnity. Van Curen Decl. ¶¶ 11, 16; see Van Curen v. Federal Crop Ins. Corp., No. 09-3509 (N.D. Cal. filed July 30, 2009). RMA issued a determination on April 6, 2010, denying Trustee's claims and requesting that Trustee return to Defendants a substantial sum of money previously issued to Debtor—plus interest and expenses—under the policies. Burnett Decl. Exhibit 18 (dkt. 36-3). RMA concluded that Debtor's crops had suffered due to poor farming practices, late harvesting, and other uninsured causes of loss. See id. The decision did not mention that Debtor or Trustee had missed the one-year arbitration deadline triggered by AGIC's final determination several years prior. See id. RMA's decision rendered the pending district court lawsuit moot, and the court accordingly dismissed the action. See Dismissal Order, Van Curen v. Federal Crop Ins. Corp., No. 09-3509, dkt. 40 (N.D. Cal. entered June 26, 2010).

The parties entered mediation, and pursuant to the mediation agreement, RMA rescinded its April 2010 decision to allow Trustee to submit additional evidence. See Burnett Decl. Exhibit 19 (dkt. 36-3). After reviewing Trustee's additional evidentiary submissions, RMA issued a second decision on May 25, 2011 ("Second RMA Decision"). Id. The 106-page Second RMA Decision reached the same conclusion as the first, denying Trustee's claims for indemnity and requesting repayment of a substantial sum—over $2.4 million. See id. The Second RMA Decision also did not mention the missed arbitration deadline. See id.

Trustee appealed the Second RMA Decision to the National Appeals Division ("NAD") of the U.S. Department of Agriculture. Trustee and Defendants participated in multiple days of hearings, leading to a lengthy NAD decision on July 18, 2012. See Van

6

Curen Decl. Exhibit A.  NAD ultimately determined that RMA had erred in its assessment of Trustee's claims, and found that RMA owed Trustee approximately an additional $2.3 million.  Burnett Decl. Exhibit 20 (dkt. 36-4).  At this stage, RMA argued for the first time that Trustee's claims were time-barred for failure to initiate arbitration against AGIC back in 2004.  See id.  NAD dismissed RMA's statute of limitations argument, stating that it did not have jurisdiction or authority to rule on disputes between insureds and private insurers, only to review agency actions.  Id. at 33-34.  NAD stressed that its duty was merely to review RMA's factual determinations pursuant to crop insurance regulations.  Id.

Both parties requested a Director Review of the NAD Decision.  On December 31, 2012, the NAD Director issued his review decision, upholding in part and reversing in part the NAD decision.  Burnett Decl. Exhibit 21 (dkt. 36-4).  At this stage, RMA again urged that Trustee's claims were time-barred, but the NAD Director agreed that he did not have jurisdiction to decide the issue.  Id. at 5 ("I dismiss RMA's time-bar argument as the issue regarding failure of [Trustee] to properly pursue legal action in accordance with an agreement with a private insurance provider is not properly before me.").  The NAD Director ultimately determined that RMA owed substantial indemnity payments to Trustee under the 2002 crop insurance policies.  Id.  The NAD Director Review marks the final administrative appeal.

On January 30, 2013, RMA sent Trustee a letter—what RMA calls an "implementation decision"—explaining how RMA planned to proceed based on the NAD determination and subsequent Director Review.  See Burnett Decl. Exhibit 22 (dkt. 36-4).  RMA advised Trustee that, based on NAD's reversal, RMA would not expect repayment of funds specified in the Second RMA Decision.  Id.  RMA further advised Trustee, however, that RMA would not pay any additional amounts that NAD found it owed under the policies because those claims were barred under the policies' mandatory arbitration clause and the relevant statute of limitations.  Id.  RMA assumed that because NAD declined to rule on the limitations issue, the argument remained valid, and thus the additional claims were time-barred.  Id.

7

1   Trustee commenced this case on October 4, 2013, asking the Court to review and
2   compel implementation of NAD's decision.  See Compl. ¶¶ 134-43.  The parties now bring
3   cross-Motions for Summary Judgment.  Trustee moves for partial summary judgment as to
4   his first claim, which asks the Court to order RMA to implement the NAD Director's final
5   determination and to pay additional amounts owed to Trustee.  Defendants move to dismiss
6   or, in the alternative, for summary judgment, arguing that the Court lacks jurisdiction and
7   that Trustee's claims are time-barred.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction.  A party can raise the subject matter jurisdiction defense at any time, even for the first time on appeal.  See Fed. R. Civ. P. 12(h)(3); Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011).  Indeed, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  Henderson, 131 S. Ct. at 1202 (citation omitted).

The Supreme Court has held that some statutes of limitation are "jurisdictional."  See, e.g., John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008); Bowles v. Russell, 551 U.S. 205, 210 (2007); United States v. Dalm, 494 U.S. 596, 609-10 (1990).  Most often, a statute of limitations is "jurisdictional" based on principles of sovereign immunity.  See John R. Sand & Gravel, 552 U.S. at 133-34; Dalm, 494 U.S. at 609-10; see also Irwin v. Department of Veterans Affairs, 498 U.S. 89, 97-98 (1991) (White, J., concurring in part and concurring in the judgment).  Where Congress waives sovereign immunity and permits suits against the federal government, but places a conditional limitation on those suits—e.g., a statute of limitations—courts have treated the condition as an absolute limitation on subject matter jurisdiction.  John R. Sand & Gravel, 552 U.S. at 133-34; see also Aloe Vera of Am., Inc. v. United States, 580 F.3d 867, 871-72 (9th Cir. 2009).  "As the United States are not liable to be sued, except with their consent, it was competent for congress to limit their liability, in that respect, to specified causes of action,

8

brought within a prescribed period." Finn v. United States, 123 U.S. 227, 232 (1887).  In cases against the United States, if a "jurisdictional" statute of limitations has run, the suit must be barred, regardless of any potential forfeiture or waiver of the limitations defense. John R. Sand & Gravel, 552 U.S. at 133-34; see Finn, 123 U.S. at 232-33; Aloe Vera of Am., 580 F.3d at 871-72.

Courts routinely resolve Administrative Procedure Act ("APA") challenges by summary judgment. Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1481 (9th Cir. 1994).  The district court "is not required to resolve any facts in a review of an administrative proceeding." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985).  The purpose of the district court in deciding a motion for summary judgment, then, "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id.  "[Courts] review questions of law, including an agency's determination of its own jurisdiction, de novo." Reynoso-Cisneros v. Gonzalez, 491 F.3d 1001, 1002 (9th Cir. 2007) (citation omitted).

## III. DISCUSSION

The Court finds that the one-year statute of limitations ran in 2004 with respect to AGIC's final denial of Trustee's claims. AGIC issued its final notice of denial on Debtor's crop insurance claims in August 2003. Van Curen Decl. Exhibit D.  AGIC's notice of denial clearly referenced the mandatory one-year arbitration requirement. Id.  Debtor's insurance policies also clearly noted the one-year limitations period and the arbitration requirement. See Van Curen Decl. Exhibit J at 12-13.  Trustee responded to the notice in July 2004, just within the limitations period. Van Curen Decl. Exhibit E.  Trustee's response acknowledged the limitations period, but claimed that the limitations provision did not apply. Id.  Trustee's response also unilaterally attempted to reserve the right to contest AGIC's denial outside of the statutory limitations period. Id.  Trustee did not commence legal action by the August 2004 deadline.

Trustee, in his July 2004 letter to AGIC, claimed that the statute of limitations did not apply because of the automatic stay imposed under 11 U.S.C. § 362. Id.  This argument

9

lacks merit. The automatic stay applies to actions <u>against</u> a debtor, but does not prevent a debtor from offensively asserting a claim. See <u>White v. City of Santee (In re White)</u>, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995) ("[T]he primary purpose of [11 U.S.C.] § 362 is not applicable to offensive actions by the debtor in possession or bankruptcy trustee."). In fact, Debtor purchased the insurance and initially submitted his loss claims to AGIC as debtor-in-possession, well after filing for bankruptcy. Once AGIC issued its decision on those claims, Debtor (or Trustee in Debtor's stead) was still required to contest the decision within the statutory period, notwithstanding the automatic stay. The one-year deadline to contest AGIC's decision therefore applied to Trustee.

Trustee's letter further argued that the arbitration provision in the insurance contract was inapplicable because the subject of the contract was a "core" bankruptcy matter and could only be addressed by the bankruptcy court. This argument does not impact the statute of limitations issue, however, because Trustee did not initiate <u>any</u> action in response to AGIC's claim denial, whether inside or outside of bankruptcy. If Trustee had filed an adversary proceeding against AGIC within Debtor's bankruptcy, then arguments about the applicability of the arbitration requirement might be relevant. But not so here.

Trustee also cites <u>In re Gandy</u>, 299 F.3d 489 (5th Cir. 2002), in support of his claim that the automatic stay permitted him to delay contesting AGIC's claim denial because the arbitration provision was not enforceable. The Fifth Circuit in <u>Gandy</u> affirmed a bankruptcy court's decision not to compel arbitration in an adversary proceeding concerning "core" bankruptcy matters. <u>Id.</u> at 494-96. <u>Gandy</u> did not involve a statute of limitations defense, only the enforceability of an arbitration agreement. Again, if Trustee had filed a timely adversary proceeding against AGIC, <u>Gandy</u> might have been relevant to the enforceability of the arbitration provision. But <u>Gandy</u> does not change the statute of limitations' requirement that "legal action" be commenced within one year of a final denial.

Accordingly, the Court finds that the statute of limitations period ran in 2004.

Next, the Court considers whether the running of the limitations period ends its inquiry, or whether the limitations period is excused because it applied only to AGIC, or

10

1  because RMA otherwise waived the defense.  Defendants advance two primary arguments as
2  to why the statute of limitations should bar Trustee's claims.  First, Defendants argue that
3  this Court lacks subject matter jurisdiction because Congress intended the Federal Crop
4  Insurance Act's one-year statute of limitations to be "jurisdictional" and thus definitive.
5  Under this theory, a time bar would be absolute and not subject to waiver or excuse.  See
6  John R. Sand & Gravel, 552 U.S. at 133-34.  Second, Defendants argue that even if the Court
7  has jurisdiction over this dispute, Defendants are still entitled to summary judgment on their
8  statute of limitations affirmative defense because Trustee's missing of the limitations period
9  should not be excused.

### A.     Limitations Period as Challenge to Court's Jurisdiction

Defendants first argue that the one-year statute of limitations provided in the Federal Crop Insurance Act, 7 U.S.C. § 1508(j)(2)(B), and included in the subject crop insurance policies, is "jurisdictional."  Def. MSJ at 11-13.  Defendants argue that this Court lacks jurisdiction because Trustee failed to comply with the one-year statute of limitations.  Id. Trustee responds that he timely filed this action within one year of NAD's final administrative decision in 2012.  Plaintiff's Opp'n to Def. MSJ (dkt. 37) at 8-9.  Trustee admits that if this action were brought against AGIC, as opposed to Defendants, "the 12-month arbitration deadline relied upon by Defendants might have some impact."  Id.  But Trustee argues that the 2003 AGIC denial is not at issue here, and that this Court should only be concerned with the Second RMA Decision, from 2011.  Id. at 9; see also id. ("Whether or not August 2004 was the deadline for suing AGIC with regard to its August 2003 decision, it was not the deadline for suing Defendants for their 2012 decision.").  Trustee misses the point.  The claims AGIC denied in 2003 are the same as the claims asserted against RMA. Upon AGIC's liquidation, the Liquidation Order "fixed" claimants' rights with respect to AGIC, and all claims under the subject policies passed to RMA.  Van Curen Decl. Exhibit G; see Van Curen Decl. Exhibit F (Memorandum of Understanding).  The Liquidation Order and its transfer of policies to RMA is the only reason Trustee had an opportunity to assert the claims against RMA, rather than continuing to pursue those claims against AGIC.  If

11


Trustee's claim was extinguished in 2004 for failing to timely initiate legal action against AGIC, and the limitations period is "jurisdictional," then RMA's subsequent review was meaningless.

Generally, statutes of limitations seek to prevent adjudication of stale claims, and are treated as ordinary affirmative defenses. See John R. Sand & Gravel, 552 U.S. at 133-34; Aloe Vera of Am., 580 F.3d at 871-72. That is, if a party fails to raise the defense, that defense may be waived. However, in cases involving the United States government, statutes of limitations are often treated differently. Where Congress, by statute, waives sovereign immunity to allow suits against the U.S. government, courts must strictly apply the limitations Congress imposed on the waiver of immunity.[2] See John R. Sand & Gravel, 552 U.S. at 133-34. These statutes of limitations are, in essence, a limitation on courts' jurisdiction over certain types of disputes.

The limited authority available in this area supports the notion that the statute of limitations provision in the Federal Crop Insurance Act, 7 U.S.C. § 1508(j)(2)(B), is "jurisdictional." See, e.g., Godbold v. Federal Crop Ins. Corp., 365 F. Supp. 836, 838 (N.D. Miss. 1973) ("The one-year limitation is unequivocal, and a dissatisfied claimant must adhere to it strictly."); Edmonds v. Federal Crop Ins. Corp., 684 F. Supp. 656, 657-58 (N.D. Ala. 1988) ("[T]he one year period is jurisdictional and may not be waived."). These cases both involved disputes with the government, however, as opposed to claims against private insurers.[3]

If Trustee's insurance claims in this case had been asserted against the government from the outset, the Court would almost certainly lack jurisdiction. Permitting the U.S. government to be sued under the Federal Crop Insurance Act is a waiver of sovereign immunity, and the one year limitations period, as applied to the government, is a condition of

---

[2] The same principle applies to suits against governmental corporations, such as the Federal Crop Insurance Corporation. See Edmonds v. Federal Crop Ins. Corp., 684 F. Supp. 656, 658 (N.D. Ala. 1988).

[3] The parties did not bring to the Court's attention, nor did the Court discover, any cases analyzing whether the statute of limitations is absolute as applied to private insurers.

12

that waiver. Here, of course, Trustee's claims were initially asserted against a private insurer. Claims against private insurers still impact the federal government because the privately issued policies are federally reinsured, meaning that the federal government has guaranteed to reimburse indemnity payments up to a certain percentage of claims. See 7 U.S.C. § 1508(k). Because claims against private issuers of federally reinsured policies might still, at least in part, be paid out of the federal government's coffers, the Court finds that the limitations provision in the Federal Crop Insurance Act retains its "jurisdictional" quality. Additionally, it is impractical to treat a statute's single limitations period differently, depending on who the defendant is in a given case. Because of significant government involvement with the policies, and in the absence of contrary authority, the Court finds that it lacks jurisdiction based on the statute of limitations having run in 2004. Accordingly, the Court GRANTS Defendants' Motion and DENIES Plaintiff's Motion.

### B.    Summary Judgment on Affirmative Defense

Even if the statute of limitations is not jurisdictional, Defendants alternatively argue that they are entitled to summary judgment for the same reason that the Court lacks jurisdiction: the indemnity claims are time-barred. Def. MSJ at 13-19. Trustee, as discussed above, argues that the mandatory one-year arbitration deadline did not apply because that deadline violated the bankruptcy automatic stay of 11 U.S.C. § 362, and because a "core" bankruptcy proceeding such as AGIC's claim denial could only be litigated in bankruptcy court. P. Opp'n to Def. MSJ at 15-17. As discussed above, Trustee's arguments do not excuse Trustee's lack of action within the limitations period.

Trustee also argues that the one-year arbitration deadline in AGIC's denial applied only to AGIC, not to FCIC or RMA. See P. Opp'n to Def. MSJ at 9. Trustee presumably argues, then, that simply by virtue of AGIC's liquidation, which passed Debtor's AGIC policies to RMA, the limitations period started fresh as to RMA. However, if AGIC never liquidated, Trustee would not have been in a position to assert his claims against RMA. If AGIC never liquidated, Trustee's claims against AGIC would have been barred for failure to

13

initiate legal action—whether arbitration or otherwise—within one year of AGIC's final notice of denial.

Of course, it might seem unfair that RMA could conduct a lengthy review of AGIC's claim denial, issue a 100-plus-page decision affirming AGIC's denial without mentioning the statute of limitations issue, and still preserve its limitations defense on appeal. This litigation has gone on for nearly ten years since the statute of limitations ran in 2004. Nevertheless, both parties were arguably careless on the limitations issue. Trustee knew of the 2004 deadline, acknowledged it, and feebly attempted to preserve his claims by written letter only. See Van Curen Decl. Exhibit E. The arguments Trustee provided in his July 2004 letter do not excuse his failure to commence some sort of legal action against AGIC before the limitations period had run. See id. Trustee did indeed attempt a second "bite[] at the apple" by filing claims with the Liquidator and with RMA, well over one year after AGIC's final denial. See Def. Reply in Support of MSJ (dkt. 38) at 8-9. Though RMA's oversight has resulted in what appears to be a tremendous waste of time and resources, that alone is no justification for permitting this action to proceed.

Trustee finally argues that the doctrine of estoppel prevents enforcement of the statute of limitations. P. Opp'n to Def. MSJ at 17-19. Trustee asserts that Defendants' initial failure to raise the statute of limitations defense acts as an estoppel and prevents Defendants from asserting the limitations defense here. Id. Trustee argues that the delay alone, resulting in significant expense on Trustee's part, establishes an estoppel claim. Id.

Trustee has not established a claim of estoppel. As Trustee notes, equitable estoppel generally requires that "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." United States v. Georgia-Pacific Co., 421 F.2d 92, 96-97 (9th Cir. 1970); Plaintiff's Opp'n at 19. But see Wagner v. Director, Fed. Emergency Mgmt. Agency, 847 F.2d 515, 519-21 (9th. Cir. 1988) (noting that estoppel applies against the government only in severe cases, and holding that party claiming estoppel

against the government must show "affirmative misconduct going beyond mere negligence," plus "serious injustice"). Trustee offers no evidence of Defendants' knowledge or intent, or Trustee's own ignorance, reliance, and injury. Accordingly, Trustee's estoppel argument fails.

Because the statute of limitations ran in 2004 without excuse, the Court GRANTS Defendants' Motion to Dismiss or in the Alternative for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

**IV.  CONCLUSION**

For the foregoing reasons, the Court finds that the statute of limitations ran with respect to Trustee's crop insurance claims in 2004. Accordingly, the Court GRANTS Defendants' Motion to Dismiss or in the Alternative for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

Dated: April 21, 2014

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE